Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Suite 600
Phoenix, AZ  85004-2322
Telephone 602-229-5200
Jeffrey H. Wolf  (#011361)
jeffrey.wolf@quarles.com

Attorneys for Plaintiff *The Joint Corp.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Joint Corp., a Delaware corporation, | NO. |
| Plaintiff, | |
| v. | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| DK2 Wellness, LLC, a Massachusetts limited liability company; Keith Kowalczyk, individually; Dwayne Acoba, individually; and Kevin Busch, individually, | |
| Defendants. | |

Plaintiff The Joint Corp. ("The Joint"), for its complaint against defendants DK2 Wellness, LLC ("DK2 Wellness"), Keith Kowalczyk, Dwayne Acoba, and Kevin Busch (collectively, "Defendants"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

This is an action for trademark infringement, false designation of origin, and breach of contract, as a result of Defendants' wrongful and infringing use of the service marks The Joint Chiropractic® and The Joint® following the termination of a franchise agreement. Despite the termination due to Defendants' systematic failure to conform to clinic

98364137.2

operational standards, and patient documentation standards imposed by the state chiropractic board, Defendants continue to operate the clinic – and are doing so in a manner inconsistent with both The Joint's operational requirements and applicable standards of care. The Joint seeks preliminary and permanent injunctive relief to prevent Defendants' continued and wrongful infringement as well as damages related thereto.

## THE PARTIES

1.      The Joint is a corporation that is duly formed under Delaware law with its principal place of business located at 16767 N. Perimeter Drive, Suite 110, Scottsdale, Arizona 85260.

2.      Upon information and belief, DK2 Wellness is a Massachusetts limited liability company with its principal place of business located at 35 Pleasant Street, Unit 30, South Weymouth, MA 02190 or is domiciled in Massachusetts for all business purposes.

3.      Upon information and belief, defendant Keith Kowalczyk is a resident of the State of Massachusetts.

4.      Upon information and belief, defendant Dwayne Acoba is a resident of the State of California.

5.      Upon information and belief, defendant Kevin Busch is a resident of the State of California.

6.      Defendants have caused acts or events to occur in the District of Arizona, out of which Plaintiff's claims arise.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.  This civil action alleged arises under the laws of the United States, including an Act of Congress relating to trademarks. This Court also has supplemental jurisdiction over The Joint's state law claims pursuant to 28 U.S.C. § 1367(a).

8.      This Court has personal jurisdiction over Defendants because they consented to exclusive jurisdiction in any state or federal court of general jurisdiction in Maricopa

98364137.2

1  County, Arizona, under the terms of the parties' contract.  The franchise agreement also
2  includes an Arizona forum selection clause.

3        9.     This Court also has personal jurisdiction over Defendants because they have
4  willfully infringed on The Joint's trademarks knowing that The Joint's principal place of
5  business is in Arizona and that the harm resulting from such infringement will be suffered
6  in this jurisdiction.

7        10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because,
8  among other things, DK2 Wellness consented to venue in this district under the terms of the
9  parties' franchise agreement, and The Joint's irreparable harm is occurring within this
10  district.

11                              **FACTUAL BACKGROUND**

12                     **The Joint® Trademarks and Business**

13        11.    The Joint is a corporation headquartered in Scottsdale, Arizona that has
14  devised a system for the establishment and operation of *The Joint Chiropractic®* clinics
15  that prioritize affordable, convenient, and accessible chiropractic care. The Joint is the
16  largest network of chiropractors in the United States with over 950 locations.

17        12.    The Joint licenses to its franchisees a distinctive system for the establishment
18  and operation of chiropractic clinics under *The Joint Chiropractic®* and *The Joint®*
19  trademarks at designated locations (the "System").

20        13.    The Joint began using its trademarks in 1999 and over the years has developed
21  a network of franchised and corporate-owned chiropractic clinics.  The Joint is the owner
22  of all right, title and interest in and to the Joint's federally-registered trademarks, trade name
23  and associated design trademarks (hereinafter the "The Joint® Marks"), including the
24  following United States Trademark Registration Numbers:

25        a)     4723892, for use in connection with "THE JOINT"; and

26        b)     6331918, for use in connection with "THE JOINT CHIROPRACTIC."

27        14.    U.S. Registration Numbers 6331918 and 4723892 are valid, subsisting and in
28  full force and effect.

98364137.2

1    15.    The Joint also has common law rights in The Joint® Marks.

2    16.    The Joint and its franchisees have used The Joint® Marks continuously and

3    extensively in commerce since at least 1999 in connection with the operation of chiropractic

4    clinics under a retail-based model whereby patients pay a monthly membership fee for

5    access to care at any of The Joint's locations.

6    17.    Through extensive use and marketing, The Joint® Marks have become

7    recognized in the industry as being associated with high quality chiropractic care, and The

8    Joint owns and enjoys valuable goodwill that is symbolized by those marks.

9    18.    The Joint operates, in part, under a franchise business model.  The Joint and

10    its franchisees enter into individual franchise agreements that govern the franchise

11    relationship.  Under such agreements, franchisees are required to comply with certain duties

12    and obligations in exchange for a limited license to a business system and format using

13    service marks and business methods that are proprietary to The Joint, and The Joint retains

14    significant rights to ensure the protection of its marks, and the uniform quality of services

15    and products provided by authorized franchisees.

16    19.    Pursuant to the franchise agreements, The Joint also imposes strict standards

17    and specifications upon its franchisees in an extensive "Operations Manual." The

18    Operations Manual ensures quality control and uniformity among the nationwide franchise

19    network, and governs areas such as clinic operations, marketing, patient protocols, quality

20    assurance standards, office management, and other operational aspects of chiropractic care.

21    20.    Pursuant to the franchise agreements, each The Joint Chiropractic® franchisee

22    operates under The Joint Marks,® in both word and design form.

23    21.    The Joint and its authorized franchisees utilize The Joint® Marks for, among

24    other things, marketing and advertising The Joint's products and services in connection with

25    operating a The Joint Chiropractic® business.

26    22.    Through extensive use and marketing, The Joint® Marks have become

27    recognized in the industry as being associated with high quality chiropractic care and related

28    services and are therefore very valuable to The Joint.

- 4 -

23.     The Joint has spent considerable money, time, and effort in promoting and popularizing The Joint® Marks, and in preserving the goodwill associated with the marks.

24.     The consuming public has also come to associate and identify The Joint® Marks with the services provided or licensed exclusively by The Joint and its franchisees.

25.     The Joint® Marks are entitled to immediate and strong protection from unfair competition, infringement and injury.

**The Joint and DK2 Wellness Execute the Franchise Agreement**

26.     Defendant DK2 Wellness is a former The Joint® franchisee, which was previously licensed to use The Joint's System and marks in South Weymouth, Massachusetts pursuant to the terms of a written franchise agreement.

27.     Defendants Kowalczyk, Acoba and Busch (also, collectively referred to herein as "Individual Defendants") are the current or former principals and co-owners of DK2 Wellness.

28.     On July 28, 2021, The Joint and DK2 Wellness entered into their franchise agreement, which was subsequently assigned pursuant to an Assignment and Assumption Agreement dated March 22, 2022, which conferred to DK2 Wellness as the "Franchisee" the ownership and operation of a *The Joint Chiropractic*® "Franchise," in accordance with The Joint's "System" as therein defined (the "Franchise Agreement"), located at 35 Pleasant Street, Unit 30, South Weymouth, Massachusetts 02190 (the "Clinic").  A complete and authentic copy of the Franchise Agreement is attached as Exhibit "1".

29.     Pursuant to the Franchise Agreement, DK2 Wellness was granted, among other things, a non-exclusive license to operate the Clinic and to use The Joint® Marks at a single location.

30.     Section 10.6 of the Franchise Agreement obligated DK2 Wellness to, among other things, "… operate the Franchise in full compliance with all applicable laws, ordinances, and regulations, including without limitation all government regulations relating to worker's compensation insurance, Medicare, HIPAA, state data privacy and

recordkeeping regulations and guidance, unemployment insurance, and withholding and payment of federal and state income taxes, social security taxes, and sales taxes."

31.     Pursuant to Section 15 of the Franchise Agreement, The Joint is authorized to terminate the agreement, *effective immediately upon delivering written notice*, and without the opportunity to cure, if among other things:

>   (h) you or any of your employees or independent contractors are involved in any action or activity, including but not limited to dishonest, unethical, or illegal actions or activities, which is reasonably likely to adversely affect the reputation of the Company, the Franchise, and/or the goodwill associated with the Marks;

>   (i) you (or any of your owners) have made or knowingly make a material false or incomplete statement, or false or incomplete representation, in any report, document, statement or agreement submitted to us; and

>   (r) you or any of your Principal Owners fail to comply with any other provision of this Agreement or any mandatory specification, requirement, standard, or operating procedure, including those in our Operations Manual, and you fail to make the required changes or to comply with such provision, specification, requirement, standard or operating procedure, within thirty (30) days after written notice of your failure to comply is given to you.

32.     Section 14.2 of the Franchise Agreement prohibits the transfer of the franchise without The Joint's prior written consent. It specifically provides:

>   (a) Your rights and obligations under this Agreement are personal to you, and we have granted the Location Franchise in reliance on your and/or your principal owners' skills, financial capacity, personal character, and reputation for honesty, integrity and fair dealing. Accordingly, you and your successors, assigns, shareholders, partners and members, may not transfer any interest in you, in this Agreement or any related agreement, in the Location Franchise (or if unopened, in the Franchise), without our prior written consent. Any purported transfer not having our prior written consent will be void. You may not transfer or sell an unopened license unless we permit the transfer or sale in writing, and in accordance with the terms of your franchise agreement.

33.    DK2 Wellness agreed that in the event of termination of the Franchise Agreement, it will "not directly or indirectly at any time identify any business with which you are associated as a current or former Location Franchise or The Joint® franchisee." (emphasis added).

34.    Sec. 17.9(a)(2) of the Franchise Agreement provides:

> **NOTWITHSTANDING THE FOREGOING PROVISIONS OF THIS SECTION 17.9(a), YOUR AND OUR AGREEMENT TO MEDIATE SHALL NOT APPLY TO ANY CONTROVERSIES, DISPUTES OR CLAIMS RELATED TO OR BASED ON THE MARKS OR THE CONFIDENTIAL INFORMATION. MOREOVER, REGARDLESS OF YOUR AND OUR AGREEMENT TO MEDIATE, YOU AND WE EACH HAVE THE RIGHT TO SEEK TEMPORARY RESTRAINING ORDERS AND TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF IF WARRANTED BY THE CIRCUMSTANCES OF THE DISPUTE.**

**DK2 Wellness's Numerous Defaults Under the Franchise Agreement**

35.    On January 24, 2025, The Joint provided written notice that Franchisee was in default of a litany of operational requirements imposed under the Franchise Agreement, including the following:

1. Fraudulent creation of patient visit/treatment documentation.

2. Failing to meet documentation standards of Medicare Guidelines, including:

a. Failure to document patient history.
b. Failure to document exam results.
c. Failure to document justification for care.

3. Failing to meet documentation standards of The State Massachusetts 233 CMR: Board of Registration of Chiropractors 4.00: Standards of Practice and Professional Conduct, including the following sections:

4.05: Chiropractic Record Keeping
(a) Failure to document the patient's case history.
(b) Failure to document findings of all examinations performed.
(d) Failure to document clinical impression.

- 7 -

4.09: Improper Charges

(10) Imposing, or authorizing the imposition of, improper charges for services, as defined in 233 CMR 4.09 (d): Charges for treatments, procedures or services which were not rendered, were not fully rendered, or were not rendered as represented by the charging chiropractor.

4. Failing to follow The Joint's policies as outlined in the Operations Manual, including the following:

i. Violations of the Patient Data Use Policy; and
ii. Violations of the Patient Record Integrity Policy.

*See* Notice of Default dated January 24, 2025 ("Notice of Default") attached as Exhibit "2".

36.     The Notice of Default expressly outlined the cures and remediation needed to reinstate your good standing under the Franchise Agreement. Specifically, the notice specifically requested the following cures and remediation:

Specific Required Cures:

1. False patient visits are to be amended in AXIS to show that the visit/treatment did not occur within 5 days of Notice. (see Exhibit A1; 3(e); 4(c) and 4(d))

Detailed Remediation

1. *Self-report violations of Practice and Professional conduct* to the Massachusetts Board of Registration of Chiropractors within 30 days of this Notice. (See finding #3, 4.05, and 4.09 above)

2. *Complete a Massachusetts Board-approved Professional Ethics course and a 6- hour approved documentation course* within 90 days of receipt of this Notice.

Ex. 2, pp. 4-5 (Emphasis added).

37.     The Notice of Default further advised:

In a final good faith effort to secure your full compliance with the Operations Manual and the terms of your Franchise Agreement, The Joint extends to you a period of **thirty (30) days** from your receipt of this Notice to fully comply and remedy all of your operational violations and material events of default under the terms of your Franchise Agreement. Your failure to fully cure your multiple events of default within **thirty (30) days** of your receipt of this Notice, shall enable The Joint to terminate your Franchise Agreement by subsequent notice.

(Emphasis in original).

98364137.2

38.    Despite being given a fair opportunity to remediate, correct or cure what amount to substantial, non-curable breaches of the Franchise Agreement, DK2 Wellness continued to operate the Clinic in a manner that contravenes The Joint's express policies and procedures.

39.    On January 27, 2025, just three days after the issuance of the Notice of Default, The Joint received screenshots of text messages sent by Dr. Kowalczyk in which he threatened to inflict bodily harm on a staff member of another clinic. Specifically, he stated in the text that he was going to "kick the shit out of" Bill Morgan, a nearby (Dedham, MA) franchisee of The Joint with whom Dr. Kowalczyk has an ongoing adversarial relationship, and Mr. Morgan's staff.

40.    As of July 2025, despite being given ample notice and opportunity to cure its numerous defaults, DK2 Wellness continued to disregard The Joint's policies and procedures in a manner that adversely reflects on the reputation and goodwill associated with The Joint® Marks.

## The Termination of the Franchise Agreement

41.    On July 25, 2025, The Joint sent DK2 Wellness a letter by which it terminated DK2 Wellness's franchise due its failure to cure the defaults outlined in the Notice of Default as well as newly discovered defaults, or defaults that had occurred subsequent to the issuance of the Notice of Default. *See* Letter dated July 25, 2025 to DK2 Wellness ("Notice of Termination") attached as Exhibit "3".

42.    DK2 Wellness failed to cure the defaults in the Notice of Default by self-reporting its violations of practice and professional conduct to the Massachusetts Board of Registration of Chiropractors within 30 days of the Notice of Default.

43.    DK2 Wellness also failed to complete a Massachusetts Board-approved professional ethics course and a 6-hour approved documentation course within 90 days of the Notice of Default.

44.    The Termination Notice advised that as of the date of that letter, The Joint had not received any evidence suggesting that DK2 Wellness had cured, or even attempted

1    to cure, any items listed in the Notice of Default.

2        45.    Following the issuance of the Notice of Default and expiration of the cure

3    period, numerous new defaults became known to The Joint.

4        46.    By way of illustration, between May 1, 2025 and July 15, 2025, reports

5    generated by The Joint indicate that the Weymouth Clinic saw 253 new patients. Of this

6    number, the new patient files of 132 patients were reviewed, and revealed the following:

7        1. Ten (10) patients had limited, or no information collected in the health

8        history portion of the Intake forms. The patient record lacked clinical information sufficient to meet the applicable standard of care;

9

10       2.  Two (2) patients did not sign a consent form or sign their Intake forms;

11

12       3.  One (1) minor patient's intake and purchase agreement lacked the signature of a parent or legal guardian;

13

14       4.  In one patient record the doctor indicated that the patient was seen for wellness care with no complaints documented and no exam

15       documented. The patient listed on Intake forms that they had three areas of complaint causing aches and pains, rating them a 7/10 on

16       the pain scale;

17       5.  Four (4) patients were missing purchase agreements for their purchases; and

18

19       6.  Three (3) patients had frozen their accounts, but no freeze form was found in their file.

20       47.    The above-described issues constitute serious patient record keeping

21   deficiencies for which DK2 Wellness was previously warned in the Notice of Default.

22       48.    Pursuant to Section 16 of the Franchise Agreement, DK2 Wellness was

23   obligated, among other things, to do all of the following upon termination:

24

25       •  Pay all amounts owed to The Joint or its affiliates which are then unpaid;

26

27       •  not directly or indirectly identify any business with which you are associated as a current or former Location Franchise or The Joint®

28       franchisee;

- *not use any Mark or any colorable imitation of any Mark in any manner or for any purpose, or use for any purpose any trademark or other commercial symbol that suggests or indicates an association with The Joint;*

- return to us all customer lists, records, membership agreements and/or contracts, forms and materials containing any Mark or otherwise relating to a Location Franchise or our network of Location Franchises;

- remove all Marks affixed to uniforms or, at The Joint's direction, cease to use those uniforms;

- take any action that may be required to cancel all fictitious or assumed name or equivalent registrations relating to your use of any Mark;

- *completely remove or modify, at your sole expense, any part of the interior and exterior decor that The Joint deems necessary to fully disassociate the Premises with the image of a Location Franchise;*

- immediately cease to use any of the Confidential Information, and agree not to use it in any business or for any other purpose; and

- immediately return to The Joint all copies of the Operations Manual and any written Confidential Information or other confidential materials that The Joint has loaned or provided to you.

(Emphasis added).

### DK2 Wellness Requests Mediation and The Joint Offers a Forbearance Agreement Pending Mediation

49.     On July 25, 2025, shortly after DK2 Wellness received the Termination Notice, its counsel demanded mediation pursuant to Section 17.9 of the Franchise Agreement.

50.     The Joint, through its counsel, agreed to mediate the parties' dispute on the condition that they enter into a forbearance agreement under which The Joint would forego

- 11 -

98364137.2

asserting its termination rights under the Franchise Agreement until the conclusion of the mediation.

51.     On July 31, 2025, The Joint's counsel transmitted to counsel for DK2 Wellness a copy of the Request for Mediation filed with the American Arbitration Association ("AAA") and a proposed Forbearance Agreement. A true and correct copy of the Forbearance Agreement is attached as Exhibit "4."

52.     In Section 3(a) of the Forbearance Agreement, DK2 Wellness covenanted as follows:

> From the Effective Date through the date the parties mediate their dispute with the AAA as provided in the Franchise Agreement (and thereafter with respect to any terms set forth below or in the Franchise Agreement that, in each case, by their nature or express terms survive termination or expiration of this Agreement or the Franchise Agreement), Franchisee will (i) not permit to exist any default, or event which, with the giving of notice or passage of time or both, would become a default, under the Franchise Agreement; and (ii) abide by Franchisor's brand standards as outlined in the Franchise Agreement, Operations Manual and other communications proffered by Franchisor.

53.     The Forbearance Agreement further provided, in Section 5, as follows:

> **Effect of Agreement on Franchise Agreement**. Unless expressly provided herein to the contrary, nothing contained in this Agreement will constitute a waiver or modification of, or a release of, any right of Franchisor under the Franchise Agreement, *nor will the execution, delivery or performance of this Agreement by Franchisee in any way affect Franchisee's obligations under the Franchise Agreement, which shall remain in full force and effect*.

(Emphasis added).

54.     On August 7, 2025, DK2 Wellness signed the Forbearance Agreement.

55.     Pursuant to the Forbearance Agreement, the DK2 Wellness and The Joint also discussed entering into a limited license agreement to provide DK2 Wellness an opportunity to sell its Clinic (the "Limited License Agreement").

56.     However, due to DK2 Wellness's ongoing breaches of the Franchise Agreement, which were discovered after The Joint agreed to mediation and offered to enter into the Forbearance Agreement and the Limited License Agreement, The Joint neither

executed a counterpart of the Forbearance Agreement nor provided a Limited License Agreement.

57.    In any event, based on the express language of the Forbearance Agreement, the execution of this agreement by DK2 Wellness in no way affected its obligations under the Franchise Agreement, which remain in effect for purposes of enforcing termination.

### The Individual Defendants' Personal Guaranties

58.    On or about July 28, 2021, the Individual Defendants executed an agreement entitled Owner's Guaranty and Assumption of Obligations (the "Guaranty") (included as Exhibit 2 to the Franchise Agreement) under which they agreed to unconditionally guarantee all of DK2 Wellness's obligations under the Franchise Agreement. A true and correct copy of the Guaranty is attached as Exhibit "5."

59.    The initial paragraph of the Guaranty specifically provides that:

> each of the undersigned owners of the Franchisee and their respective spouses ("you," for purposes of this Guaranty only), hereby personally and unconditionally agree to perform and keep during the terms of the Agreement, each and every covenant, obligation, payment, agreement, and undertaking on the part of Franchisee contained and set forth in the Agreement. Each of you agree that all provisions of the Agreement relating to the obligations of Franchisees, including, without limitation, the covenants of confidentiality and non-competition and other covenants set forth in the Agreement, shall be binding on you.

60.    Pursuant to the Guaranty, The Joint is entitled to recovery of its attorneys' fees, costs and expenses that it incurs in enforcing the Individual Defendants' obligations.

### Defendants' Post-Termination Breaches and Ongoing Unlawful Conduct

61.    Following termination of the Franchise Agreement, DK2 Wellness has continued to provide chiropractic services, treating the same patients and operating in the same location, but now purports to do so while actively engaged in an unauthorized sale of the Clinic to a third party.

62.    Additionally, since the Franchise Agreement terminated, DK2 Wellness has continued to engage in conduct that is contrary to The Joint's operating standards and violates both the Franchise Agreement and applicable standards of chiropractic practice. More specifically, the ongoing misconduct includes, but is not limited to, the following:

a. processing a wellness plan application missing credit card information, dates, and initials;

b. processing blank updated patient intake forms;

c. processing a patient intake form without informed consent or date of intake;

d. treating a minor without parental consent and a blank patient information and patient history;

e. processing wellness plan applications for a minor patients with missing pages and without parental consent;

f. processing an intake form with the date missing the date and without the patient's informed consent and witness signatures; and

g. processing a blank intake form for treatment of a minor patient.

63.    In sum, despite being given the opportunity to mediate while The Joint abstained from enforcing its termination enforcement rights, DK2 Wellness, through Dr. Kowalczyk's oversight of operations, has proceeded with the systematic mismanagement of the Clinic by:

a. Fraudulently creating patient visit/treatment documentation;

b. Failing to meet documentation standards of Medicare Guidelines;

c. Failing to meet documentation standards of The State Massachusetts 233 CMR: Board of Registration of Chiropractors 4.00: Standards of Practice and Professional Conduct; and

d. Failing to follow The Joint's policies as outlined in the Operations Manual.

64.    These are all serious violations of patient consent and record keeping requirements, which evidences clinic mismanagement to a degree that exposes both DK2 Wellness and The Joint to potential civil liability.

65.    All of the above-described operational deficiencies occurred after the issuance of the Termination Notice on July 25, 2025, and in many cases after DK2 Wellness executed the Forbearance Agreement on August 7, 2025.

98364137.2

66.     On August 29, 2025, without first obtaining The Joint's prior written consent as required by Section 14.2 of the Franchise Agreement, and without execution of a Limited License Agreement to grant DK2 the right to sell the Clinic as DK2 Wellness and The Joint previously discussed, DK2 Wellness unilaterally executed an asset purchase agreement under which it agreed to sell or transfer the Clinic and all of its business assets, including its non-transferable rights under the Franchise Agreement, to a third party for the purchase price of $750,000 (the "APA"). A true and correct copy of the APA is attached as Exhibit "6."

67.     As previously set forth herein, Section 14.2 of the Franchise Agreement makes it mandatory for DK2 Wellness to obtain The Joint's prior written consent before it may transfer the Clinic and related franchise assets.

68.     The APA includes the following buyer contingencies: (a) Buyer obtaining SBA loan approval for $675,000 within ninety (90) days; (b) Buyer's satisfactory review of all books, records, and due diligence materials within thirty (30) days; (c) No material adverse changes to the business before closing; (d) Buyer's ability to secure assignment or satisfactory new terms of the lease.

69.     The APA is also expressly contingent upon the buyer "obtaining written approval from The Joint Corp. (the "Franchisor") of the transfer, assignment, and continuation of the franchise rights relating to the Business. If such approval is not obtained from the Franchisor within ninety (90) days after the date hereof, or if the Franchisor withholds or conditions approval upon terms not reasonably acceptable to Buyer."

70.     The APA also contains a provision that requires DK2 Wellness to assist the buyer (including but not limited to facilitating the set-up and transfer of the patient files, client and vendor information for a period of  thirty (30) business days after the closing at no additional cost to Buyer, or a total of up to 96 hours."

71.     DK Wellness not only failed to obtain The Joint's prior written consent to enter into the APA, but it also negotiated material contract terms, such as DK2 Wellness, through Dr. Kowalczyk, continuing to operate, oversee or help transition the Clinic for up

98364137.2

to 120 additional days (including up to 30 days post-closing), which The Joint previously communicated it would not approve.

72.     While flagrantly disregarding the terms of the Franchise Agreement, DK2 Wellness is continuing to benefit from the goodwill associated with The Joint® Marks in its chiropractic services business, and is willfully associating itself with The Joint and infringing on The Joint® Marks.

73.     Defendants have continued to use The Joint® Marks, the System, and proprietary materials, and they have continued to operate the business in a manner that tends to give the public the impression that DK2 Wellness is still affiliated with The Joint.

74.     As of the date of filing this action, Defendants were continuing to display The Joint® Marks at the Clinic and otherwise operating the Clinic as though it were a Joint Chiropractic® clinic.

**DK2 Wellness's Conduct is Causing The Joint to Incur Irreparable Harm**

75.     DK2 Wellness, through the Individual Defendants, have engaged in ongoing, systematic, and illegal conduct that is damaging to the rights of The Joint's patients as well as its brand reputation and customer goodwill.

76.     As a result of Defendants' ongoing wrongful conduct, as described herein, The Joint has sustained, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

77.     Unless enjoined, Defendants will continue using The Joint® Marks in connection with the operation of the Clinic without authorization from The Joint.

78.     Defendants' improper and unauthorized use of The Joint® Marks is likely to cause confusion, mistake or deception with respect to the relationship between The Joint and DK2 Wellness.

79.     Defendants have purposefully and willfully continued to misuse The Joint® Marks® after receiving the Notice of Termination in flagrant disregard of The Joint's rights, as well as the rights of its patients and other franchisees.

**COUNT I**

**TRADEMARK INFRINGEMENT**

**Lanham Act §32(1) (15 U.S.C. § 1114)**

**(Against All Defendants)**

80.    The Joint realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 79

81.    Defendants are no longer authorized to use The Joint® Marks.

82.    Defendants continue to use The Joint® Marks in connection with a The Joint business in Weymouth, Massachusetts.

83.    Defendants have used The Joint® Marks to give the relevant public the false impression that The Joint has authorized or endorsed DK2 Wellness' products and services.

84.    Defendants' use of The Joint® Marks is an effort to trade off of the goodwill developed in The Joint® Marks.

85.    Defendants' unauthorized use of The Joint® Marks is likely to cause confusion or mistake, or to cause the relevant public to falsely believe that DK2 Wellness is approved or sponsored by The Joint.

86.    Defendants' wrongful and unauthorized conduct infringes on The Joint® Marks, including United States Trademark Registration Numbers 6331918 and 4723892.

87.    The Joint has previously demanded that DK2 Wellness cease all use of The Joint® Marks.

88.    Defendants have continued using The Joint® Marks, even after receiving The Joint's demand to cease and desist.

89.    Defendants' actions, as set forth above, were and are intentional, willful and in reckless disregard of The Joint's rights.

90.    Defendants' actions, as set forth above, have unjustly damaged The Joint® Marks, as well as the business reputation and goodwill associated with these marks.

91.    Defendants' actions, as set forth above, have unjustly enriched DK2 Wellness.

- 17 -

1  92.    Defendants' actions, as set forth above, are causing irreparable injury to The

2  Joint for which there is no adequate remedy at law.

3  93.    Defendants' actions, as set forth above, constitute willful trademark

4  infringement, thereby entitling The Joint to the remedies set forth in 15 U.S.C. §§ 1116,

5  1117 and 1118.

6  ## COUNT II

7  ### FALSE DESIGNATION OF ORIGIN

8  ### Lanham Act §43(a) (15 U.S.C. § 1125(a)(1)(A))

9  ### (Against All Defendants)

10  94.    The Joint realleges and incorporates by reference as if fully set forth herein

11  the allegations contained in paragraphs 1 through 93.

12  95.    The Joint has continuously and extensively used The Joint® Marks throughout

13  the United States in connection with chiropractic services and franchises of same.

14  96.    As a result of The Joint's use of The Joint® Marks, it has both federal

15  trademark registrations in the marks and common law trademark rights in various other uses

16  of these marks.

17  97.    The Joint® Marks have come to represent and symbolize the reputation and

18  valuable goodwill associated with The Joint's chiropractic services and franchises of same.

19  98.    Defendants are no longer authorized to use The Joint® Marks.

20  99.    Defendants' unauthorized use of The Joint® Marks, both registered and in

21  common law, is likely to cause confusion or mistake, or to deceive customers or potential

22  customers into falsely believing that services provided by DK2 Wellness are approved,

23  endorsed, sponsored or made by The Joint, in violation of 15 U.S.C. § 1125(a)(1)(A).

24  100.    Defendants' unauthorized use of The Joint® Marks was and continues to be

25  done intentionally, willfully and with reckless disregard for The Joint's rights.

26  101.    Defendants' actions set forth above have unjustly damaged The Joint® Marks,

27  The Joint's business reputation and the goodwill associated with The Joint® Marks.

28

98364137.2

102.    Defendants' actions are causing irreparable harm to The Joint for which there is no adequate remedy at law.

103.    Defendants' actions set forth above constitute willful trademark infringement, thereby entitling The Joint to remedies set forth in 15 U.S.C. §§ 1116, 1117, and 1118.

**COUNT III**

**BREACH OF CONTRACT**

**(Franchise Agreement)**

**(Against DK2 Wellness)**

104.    The Joint realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 103.

105.    The Franchise Agreement is a valid contract between The Joint and DK2 Wellness.

106.    The Franchise Agreement terminated on July 25, 2025 pursuant to The Joint's issuance of the Termination Notice.

107.    As set forth herein, DK2 Wellness has materially breached the Franchise Agreement in numerous respects.

108.    As a direct and proximate cause of DK2 Wellness's breaches of the Franchise Agreement, The Joint has been damaged in an amount to be proven at trial.

109.    Pursuant to the Franchise Agreement, The Joint is entitled to recovery of its attorneys' fees, costs and expenses that it incurs in this action.

**COUNT IV**

**BREACH OF CONTRACT**

**(Guaranty)**

**(Against the Individual Defendants)**

110.    The Joint realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 109.

98364137.2

111.    As described herein, pursuant to the Guaranty, the Individual Defendants agreed to personally guarantee all of DK2 Wellness's obligations under the Franchise Agreement.

112.    The Guaranty is a valid and enforceable contract

113.    As described herein, DK2 Wellness is liable to The Joint for damages in an amount to be determined.

114.    DK2 Wellness has refused or failed to pay the amounts due and owing to The Joint despite prior demand.

115.    The Individual Defendants are in breach of the Guaranty by failing to satisfy DK2 Wellness's obligations to The Joint.

116.    As a direct and proximate result of the Individual Defendants' breaches of the Guaranty, The Joint has been damaged in the amount to be proven at trial.

117.    The Individual Defendants are jointly and severally liable to The Joint for all damages incurred as a result of DK2 Wellness's breaches of the Franchise Agreement.

118.    Pursuant to the Guaranty, The Joint is entitled to recovery of its attorneys' fees, costs and expenses that it incurs in enforcing the Individual Defendants' obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, The Joint respectfully requests judgment against Defendants, and each of them, as follows:

A.    A determination that DK2 Wellness has breached the Franchise Agreement and compensation for all actual and consequential damages;

B.    A preliminary and permanent injunction prohibiting Defendants, and all those in active concert and participation with them, from using The Joint® Marks or any form thereof;

C.    Compensatory damages, in an amount to be determined by the trier of fact, for all harm The Joint has suffered as a result of Defendants' actions;

D.    Treble damages as provided under 15 U.S.C. § 1117;

98364137.2

1    E.    Disgorgement of all amounts of money realized by Defendants' unauthorized

2    use of The Joint® Marks or any form thereof;

3    F.    The Joint's actual costs and attorneys' fees as provided under the Lanham

4    Act, 15 U.S.C. §§ 1117, 1125(a);

5    G.    The Joint's costs and attorneys' fees as provided for under the Franchise

6    Agreement and A.R.S. § 12-341.01;

7    H.    An order that Defendants be directed to file with the Court and serve on The

8    Joint, within thirty (30) days after issuance of an injunction, a report in writing and under

9    oath setting forth in detail the manner and form in which DK2 Wellness has complied with

10   the injunction pursuant to 15 U.S.C. § 1116; and

11   I.    Such other relief as the Court deems necessary and just under the

12   circumstances.

13                        **DEMAND FOR A JURY TRIAL**

14   The Joint hereby demands a trial by jury in this action on all claims and issues triable

15   before a jury.

16

17   RESPECTFULLY SUBMITTED this 8th day of September, 2025

18                                    QUARLES & BRADY LLP
                                      One Renaissance Square
19                                    Two North Central Avenue
                                      Suite 600
20                                    Phoenix, AZ  85004-2322

21

22                                    By:/s/ *Jeffrey H. Wolf*
23                                         Jeffrey H. Wolf

24                                    Attorneys for Plaintiff *The Joint Corp.*

25

26

27

28

- 21 -

98364137.2